Good morning, Your Honors. Renee Maness at the Federal Public Defender's Office. I'm here on behalf of the appellant, David Johnson. I'd like to reserve two minutes for my rebuttal argument. This is a case involving conditions of supervision. Mr. Johnson pled guilty to the federal offense of being a felon in possession of a firearm and was sentenced to five years of probation. At the time of his sentencing, no condition of supervision or probation required him to have any assessment for sex offender or any sex offender treatment. While it was clear that his presentence report indicated a two-decade and a three-decade-old sex offense, there was no consideration at the time of sentencing that it was necessary to address those issues. Subsequent to sentencing, the probation office requested a modification of the supervision to require both a sex offender assessment and, if necessary, a sex offender treatment program. Mr. Johnson objected to those conditions, noting that they were not reasonably related to the conditions of supervision, the need to help rehabilitate him from the offense of being a felon in possession of a firearm, or the need to protect the public. As Mr. Johnson and I noted to the district court, at the time of his offenses in California, he had completed a sex offender treatment program, and since that time, there had been... Is that in the record any place? Yes. He stated as much to the probation office... Were there any tests in there? Were there any evidence in there? And I didn't find any other than the statements. Which, Your Honor, is, in fact, some evidence. The probation... Well, I understand what it is. I'm not suggesting what it is or it isn't. I'm just asking if I missed something in trying to review. The probation office was unable to confirm either way. And our... And we don't have anything in the record... We have Mr. Johnson's statement. Other than the testimony. Right. And it is the government's burden on these issues. And the government's basic position is, because we cannot prove we have met our burden, that is not meeting a burden. A burden is to confirm... Let me back off just a little bit. What is my standard of review in this particular matter? The standard of review is, in fact, abuse of discretion. Which means what? It means whether or not, under the specific requirements for a supervised release case, if... Well, what does it mean? I mean, what standard do I really apply there? Don't I apply an implausible standard? It's totally implausible for the district court to have got where they got? Isn't that the standard? I don't believe implausibility is it. I believe the issue is whether or not the conditions are reasonably related to the statutory goals... Well, I understand that, but that's not the standard. That's what I'm trying to determine what to do. I'm trying to determine, did the district court abuse his discretion? So I'm saying to myself, how do I know when he abused his discretion? Well, we've got a few other cases now out there that say that's only when it's implausible. I'm not sure that I'm familiar with the terminology specifically of implausibility. Okay. Do I understand correctly, you're saying the judge abused his discretion because in ordering this sex offender assessment, he did this because your guy has two old priors? Is that right? Correct, Your Honor. And the specific statement that the district court used, as quoted in the government's brief and also in the government's supplemental excerpts of record at 4, is that the court found there was vanishingly little justification for any restraint on liberty related to the prior sex offenses. But the problem was the priors, the sex priors, sex offense priors, were 20 years old and... 20 and 30. 20 and 30 years old. And we have a case that says that when you have old priors like that, they're – I'm oversimplifying, but basically too stale unless there's some kind of connection. Is that right? Correct, Your Honor. Now, here's my next question. So there's got to be some kind of connection between this guy's current offense and these old priors, or else the TM case invalidates it. TM, and I believe the recent unpublished decision in Sharp, which I just found and provided in the supplemental. Okay. And here's where I'm headed with this. His priors, unlike in the TM case, his prior sex offenses both involved weapons. In one case it was a gun, in another case it was a knife. The current charge is felon in possession of a firearm. So it seems to me there is some kind of logical connection between his priors, old though they may be, and his current offense, which is a weapons offense. What's your answer to that? I don't believe there are any admissions by Mr. Johnson that he utilized weapons in the prior offenses, and they did not go to trial. Well, that was in the pre-sentence report that his 1980 conviction involved a knife point, and in 1990 that he used a gun. And I believe also in the pre-sentence report were statements by him that they were consensual sexual activity. Okay. But he wound up getting convicted and going to prison for that consent. So, okay. He pled guilty to offenses, but not necessarily. Let's assume the judge believes the pre-sentence report. Isn't there a nexus then between a felon in possession of a firearm and using a firearm in a sex offense? I don't believe that that's a sufficient nexus, particularly under the TM case. If you look at the TM case, the violations, and there were actual violations in that matter that were being addressed, were, in fact, specifically related to concerns about sexual issues. A gentleman who had sex. No, but TM was convicted of a drug offense. And his violations. Not a firearms offense. And his violations that the conditions were imposed to address were violations of him possessing pornographic material and attempting to set up charities to deal with children when his sex offense involved children. His violations were much more linked to pornography activities, attempting to obtain access to children, and, therefore, sexual issues. And there was a sex offender assessment in TM which stated that he was at risk for offending. And, nevertheless, in spite of that much greater nexus than Mr. Johnson's case, there was, in fact, not sufficient nexus to require those assessments under the Ninth Circuit's. Well, that's not exactly what happened in TM, because we weren't just talking about an assessment. The district court there imposed further sexual assessment, treatment, prohibition against contacting the children, prohibition against any form of pornography, and not using the Internet without permission of the probation officer. The only thing that's similar here is that there's going to be an assessment. Correct, Your Honor. At the time that the appeal was taken in TM, he had not objected to the assessment. He had complied with the assessment. He did not bother to appeal until after further conditions were analyzed. But if you look at the conclusion of TM. So you're saying that just because that we had only an assessment here, nothing about treatment, even don't can't even have a polygraph, all he has to do is have an assessment as to what to do, and that TM had all of these added conditions that they're still the same case? Your Honor, yes. If you look at the conclusion of TM in the last paragraph, which I don't have the pin site, but it's at our excerpts of Record 42, the Court specifically addressed conditions 4 and 6 through 13, saying those were the nonjustified condition, and 4 was the assessment. The implication from TM was that if he had appealed the assessment, he would not have been required to go forward with it, because the Court found that's in the case, Your Honor, yes. So your time is down to a minute and 45. Thank you. Good morning. Good morning. May it please the Court. Kelly Zusman appearing on behalf of the United States. Your Honor, the single issue that is raised with this appeal really all boils down to one thing. Judge Mossman and the probation officer wanted more information about Mr. Johnson. Judge Mossman was fully cognizant of the TM case. He read it. He discussed it with the parties. And because of TM, he didn't order treatment. All he wanted and all the probation officer wanted was to have an assessment to find out if, in fact, Mr. Johnson posed any threat right now. And in terms of the standard of review being abuse of discretion, I would ask, would any reasonable jurist do what Judge Mossman did here, confronted with this defendant's criminal history? And in terms of the timing, I just think it's far too narrow a reading of TM to say if they're so old, then we're just done. No conditions can be fashioned to address convictions that are simply too old. I think the nature of the prior offense has got to be a factor. And the seriousness of what happened, I mean, these prior convictions involved a really extraordinary level of violence. They involved weapons. His instant offensive conviction was for trying to sell a firearm. That's of concern. The fact that these involved forcible sex offenses, the gun to the 14-year-old's head and the knife to the throat of the co-ed, those are of concern. They raise concerns about public protection. And that's why I think Judge Mossman said, gosh, we've been unable to confirm if he has had sex offender treatment. That's really concerning. The probation officer attempted to get those records, wasn't able to do that. And so to the extent Mr. Johnson claims he received some form of sex offender treatment, we have no idea what that was. Let me ask, at the hearing, it seems to me that the defendant only objected to including the polygraph exam. Is that correct? He certainly did raise an objection to the polygraph to the extent that would be a part of an assessment or treatment. But he did, I do believe he did, in fact, object to the assessment itself. So he has preserved that. The other thing that I want to point out about the timing here is we keep talking about the fact that these were 20- and 30-year-old convictions, and I think that's not entirely accurate. The sexual offense took place 20 years ago, and that was the gun to the 14-year-old's head. The sexual offense involving the co-ed took place 30 years ago. But when he received a 13-year sentence for the sex offense involving the 14-year-old girl, he served 6 years of that time, and he was paroled for a while, and then he was taken back into custody. And we don't know why, because we don't have those records from California. So the temporal proximity of his release from custody to the instant offense is 13 years. So I think for all of these reasons, given the nature of these prior offenses, given the fact that this is repeated criminal activity that Mr. Johnson has engaged in, Judge Mossman very reasonably said, look, let's at least get an assessment. Then if he needs treatment, we will deal with that down the road. But he said very clearly to Mr. Johnson during this hearing, look, if the assessment comes back and says, no longer a threat, this isn't an issue for you anymore, then we're done. So for all of these reasons, I would urge this Court to affirm Judge Mossman's ruling and allow this assessment to go forward. Thank you, Ms. Hussman. Ms. Baines, you have about a minute and a half or so left. Thank you, Your Honors. I'd actually like to start you with what you closed with before. You made reference to TM and Condition 4 and cited that as basically a holding by the TM panel binding on us that the assessment by itself was, you know, inappropriate. Now, when I went to look at it, I was oppressed by the arguments. I went to look at Condition 4, and it says it starts with participate in sex offender treatment as directed by the probation officer and submit to risk assessment. I can't say that I read that the way you've offered it to us, but I want to give you an opportunity to explain to me why I should read it your way. I mean, it talks about treatment, not just about assessment. And it seems to me that's what TM is talking about. It specifically has the risk assessment terminology in there. That's what I read. Oh, yeah, but it's buried after talking about treatment. And treatment is what TM was about, as you've acknowledged the defendant in TM didn't appeal the assessment. Correct. So I'm having trouble reading that decision as a holding that the assessment was inappropriate. It just said Condition 4 was inappropriate, but Condition 4 contained the treatment that was the focus of the appeal. Condition So you're saying because the panel didn't go to the trouble of carving out the part that wasn't appealed, we should read that as a holding covering the part that wasn't appealed. I just don't see that. My analysis of the case, and perhaps, I mean, certainly I understand that there's room to differ, but if you look at the conditions that are set forth, again, I don't have the pencil, but it's on our excerpt of record, page 38. The conditions there are 3 through 14 set forth. Both the assessment and the treatment are in Condition 4. The conclusion of the case, which is on page 42, states that Conditions 4 and 6 through 13, all the sex offender conditions, all the sex offender conditions. But that wasn't appealed, so it wasn't a part of the discussion. It was not previously appealed before he complied. Okay. But that condition was one of the conditions noted in TM in Condition 4, and those conditions 4 and 6 through 13, all of these sex offender conditions were the ones which were deemed inappropriate. I would just like to also note that there's — there was a statement by the district court, and I believe a belief by the government, that this condition is — is a de minimis restraint on liberty. I — I must say that I disagree. Requiring an individual to talk to a complete stranger about their entire sexual history, their sexual activity, their sexual thoughts, I believe is a significant restraint on liberty. Well, that may be one of the drawbacks of being convicted of a couple of sex offenses. And certainly, he was required at that time to comply with those conditions. The question is now whether, 30 years later, he must continue to do so. Thank you. Thank you, Your Honor. Thank you, Ms. Loosman. The case just argued is submitted. Good morning. 12-30053, United States v. Hill. Each side will have 10 minutes. Thank you, Your Honor.
judges: Silverman, Clifton, Smith